UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

**RICHARD KANIEWSKI,**

    **Plaintiff,**

v.

    Case No. 2:09-cv-12159
    Hon. Robert H. Cleland
    MJ. Virginia M. Morgan

**NATIONAL ACTION FINANCIAL SERVICES, INC.,**

    **Defendant.**

| LAW OFFICES OF BRIAN P. PARKER, PC. | VARNUM, RIDERRING, SCHMIDT & |
|---|---|
| BRIAN P. PARKER (P48617) | RANDALL J. GROENDYK (P37196) |
| Attorney for Plaintiff | Attorney for Defendant |
| 30700 Telegraph Rd., Ste. 1580 | Bridgewater Place, P.O. Box 352 |
| Bingham Farms, MI 48025 | Grand Rapids, MI 49501 |
| Tel: (248) 642-6268 | Tel: (616) 336-6000 |
| Fax: (248) 642-8875 | Fax: (616) 336-7000 |
| lemonlaw@ameritech.net | rjgroendyk@varnumlaw.com |
| www.collectionstopper.com | www.varnumlaw.com |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS

NOW COMES the Plaintiff, Richard Kaniewski, by and through his attorney, and in response to Defendant's Motion for Summary Disposition, prays that the Court dismiss Defendant's Motion for Summary Judgment and Motion to Dismiss and grant the following relief;

1.     Deny Defendant's Motion for Summary Judgment;

2.     Deny Defendant's Motion to Dismiss; and

3.     For such other and further relief as the Court may deem just and proper.

          Respectfully submitted,

          ___s/Brian P. Parker_____
          BRIAN P. PARKER (P48617)
          Attorney for Plaintiff
          30700 Telegraph Road, Suite 1580
          Bingham Farms, MI 48025
          (248) 642-6268
          lemonlaw@ameritech.net

DATED: November 10, 2009

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

RICHARD KANIEWSKI,

    Plaintiff,

v.

    Case No. 2:09-cv-12159
    Hon. Robert H. Cleland
    MJ. Virginia M. Morgan

NATIONAL ACTION FINANCIAL SERVICES,
INC.,

    Defendant.

| LAW OFFICES OF BRIAN P. PARKER, PC. | VARNUM, RIDERRING, SCHMIDT & |
|---|---|
| BRIAN P. PARKER (P48617) | RANDALL J. GROENDYK (P37196) |
| Attorney for Plaintiff | Attorney for Defendant |
| 30700 Telegraph Rd., Ste. 1580 | Bridgewater Place, P.O. Box 352 |
| Bingham Farms, MI 48025 | Grand Rapids, MI 49501 |
| Tel: (248) 642-6268 | Tel: (616) 336-6000 |
| Fax: (248) 642-8875 | Fax: (616) 336-7000 |
| lemonlaw@ameritech.net | rjgroendyk@varnumlaw.com |
| www.collectionstopper.com | www.varnumlaw.com |

## PLAINTIFF'S BRIEF IN RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS

**SYNOPSIS**: Defendant debt collector made several calls to Plaintiff and his co-workers and would not stop until this lawsuit was filed. Through this Motion, Defendant is asking permission to harass a person and his co-workers without any fear of redress for Plaintiff and at the same time claim they know nothing about the abuse when a victim complains. With its past behavior and misguided reliance here on *Kujawa*, there is nothing to stop the Defendant debt collector from continuing the harassment if this lawsuit is dismissed.

### I.     INTRODUCTION

Plaintiff has filed a complaint against Defendant for Defendant's actions taken against Plaintiff involving the collection of a debt that belongs to a different debtor. Defendant has brought its Motion for Summary Judgment and Motion To Dismiss regarding Plaintiff's claims Defendant violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692 et seq., the Michigan

Collection Practices Act ("MCPA") and the Michigan Occupational Code ("MOC"). As discussed more fully below, Defendant's Motion should be denied.

## II. STATEMENT OF FACTS

From December of 2008 through April of 2009 Plaintiff received several automated messages at his place of employment from Defendant regarding the collection of an alleged debt. Mr. Kaniewski attempted to stop the calls on his own by calling the Defendant to ask them to stop calling him at his workplace, Cavalier Telephone. The calls continued and unfortunately, many of the calls were answered by Plaintiff's co-workers and it was not long before the office was alive with the talk of Mr. Kaniewski's debt problem.

Both Mr. Hayder Allebban and Mr. Nicholas Schmidt who report directly to Mr. Kaniewski were deposed and reported that Mr. Kaniewski received many calls and his workplace knew all of this was going on.

**Mr. Allebban** reported in his Deposition:

**Q:** Okay. So both to your estimation, both you and Mr. Schmidt are receiving these calls from Mr. Kaniewski's line, is that correct?

**A:** Correct.

**Q:** Is there any chance that those calls were going directly to you because of a debt, outstanding debt in this situation?

**A:** No, no.

**Q:** So these were from Mr. Kaniewski's phone, is that correct?

**A:** Right. Yes.

**Q:** And you're saying the correspondence or the contact or communication that you heard was the same as we played and it was the lady, not the gentleman?

A: Correct.

Q: Okay. Did you react in any way to those calls?

A: Yes, I was confused. I don't know why that kind of a call would be going to his number unless it came form another number so– and the only other number that I knew that was forwarded to our hot line is Rich's number.

So when he came back from vacation, I asked him about it and he se3emd upset that I was getting the same calls that he's getting.

Q: Okay. So you're another employee that's contacting Rich and saying, "Hey, what's with these debt collection calls?"

A: Right.

Q: Okay. And you say, if you could be specific, he seems upset and you're telling about an emotional reaction. Were there any words that he used?

A: There could have been some expletives in there. I mean, obviously he's really upset. I can tell from the way he looked and he knew that he shouldn't have been getting those calls. So he told me what was going on and how he's getting these calls that he shouldn't have been getting and he explained to me that situation.

Q: Okay. Briefly tell me the situation of what was going on that led to your receiving those calls.

A: Well, before that, I already knew that the was getting those kind of calls, and that's my other experience with what was going on. My cubicle sits right outside his office, so I can hear a lot of his phone calls.

And I heard at least three or four of these calls come to him where he talked to a representative. And he's telling them that he doesn't know why they're calling him and he's trying

to find out what's going on, why they're calling this number. He's mentioning all these other people that it might have been addressed to, not him, an all these different numbers associated with them. And he's basically just trying to figure out why these calls are going to him.

**Please see Exhibit 1, Deposition of Mr. Hayder Allebban Pages 7-9.**

In his Deposition **Mr. Nicholas Schmidt** stated:

**Q:** Does that sound familiar, like one of the calls:

**A:** Yes, that was one of them.

**Q:** It was a female, too you mentioned?

**A:** It sounded mor automated.

**Q:** Well, let's see the female.

*(Playing recording.)*

**The Witness:** The was the one I remember vividly, but the other one kind of sort of– I can't recall when it was but–

**Mr Parker:** All right. One more.

*(Playing recording.)*

**By Mr Parker:**

**Q:** When you said they ere automated, is that because you keep getting the same one again and again?

**A:** Yes.

**Q:** Similar to those two?

**A:** Yes. That– I've heard that one with the female a few times.

**Q:** Okay. And were they mentioning Mr. Kaniewski's name or somebody else's name.

**A:** No name.

**Q:** No name?

**A:** No name.

**Q:** Just telling you who to call back?

**A:** Yes.

**Q:** But they told you it's a debt collector?

**A:** Yes.

**Q:** Is that correct?

**A:** Yes.

**Q:** And again, you're sure that they were calls from Mr. Kaniewski's line, is that correct?

**A:** Well, I haven't gotten any since or before I was having his number forwarded to mine.

**Q:** And then previous to hearing this, you had a discussion with Mr. Kaniewski saying, "Hey, what the heck?"

**A:** Well, when I got one in December, when he was on vacation in December, I–

**Q:** Let me just stop you there. You got one in December?

**A:** Yes, or his Disney trip.

**Q:** Similar to that?

**A:** Yes.

**Q:** So this started way back in December you started getting these calls?

A: Roughly around there, yes.

**Q:** 2008?

**Q:** Were you to get these calls for you personally, because we're just talking about your experience and observations now, and it continued, would that affect your workplace?

**A:** If it was coming to my work phone?

**Q:** Yes.

**A:** Yes.

**Q:** Okay. Why?

**A:** Well, I mean, I do a lot of different things and I have to go into loud noise and environment and a lot of troubleshooting, a lot of intense work at times, where if I'm getting people call me about debt that I don't have in the middle of a problem– and we've had, you know, many a problem in the last six months, that, you know, I don't' know if he got one. It didn't happen while he was on vacation. But I mean, if we're in the middle of something and we're getting phone calls from a debt collector trying to, you know, while I'm trying to figure out a network=wide outage, there's a bit of an issue.

**Q:** Okay. That's cool. Going mor to the policy of the company, if you're aware of it, do they frown upon it or do they welcome you receiving debt collectors' calls at work when you should be doing your job?

**A:** I'm going stay they frown upon it, yes.

**Q:** Why would you say that?

**A:** Well, I mean, what company would want you to get debt collectors?

**Q:** Okay.

**A:** That's personal business, not–

**Q:** Were you aware that Mr. Kaniewski made effort to try to get them to stop?

**A:** I know he's called them to a couple few times to try to get them to remove his number.

**Q:** And do you know if they did or if the calls continued when he went on vacation?

**A:** The calls continued when he went on vacation.

**By Mr Defoe (Defendant Attorney at Deposition):**

**Q:** And you said that you talked with Mr. Kaniewski after receiving each of these calls, is that right?

**A:** When I first got them in December, I talked to him about it. After that, I know I got a few when he was on vacation. I may have mentioned it to him saying, "Hey, you're still getting those phone calls." And kind of joked with him at first, as I said. But other than that, you know, I king of left it be. It's not for me to really question.

**Q:** Did you talk with anyone else here at Cavalier Telephone about the fact that you had received those calls?

**A:** Some of the guys in the group may have– I believe Hayder's heard about it a couple times with the phone calls, because he's the other person that kind of helps do things while in charge while Rich is gone. So I believe I've discussed it with him a couple of times.

But I try to leave that be so that I don't– you know, as I said, it's not my place to snoop around about it, because I don't need to make anybody angry.

**Q:** Did you discuss it with anybody else other than, is it Hadyer? I apologize–

Mr. Allebban: Hayder, right.

The witness" Hayder, right.

**By Mr. Defoe:**

**Q:** – if I mispronounce that. Did you discuss the phone calls with anyone else other than Mr. Kaniewski and Hayder?

**A:** Discussed, no. I may have mentioned it in front of other guys in our group. Our area and where our Professional Services Group has people walk by all the time, so I may have been discussing it in front of people. I couldn't give you exact people that may have overheard the conversation.

**Please see Exhibit 2, Deposition of Mr. Nicholas Schmidt Pages 10-12, 16-17**

Plaintiff continued to contact Defendant and asked them to remove him from their system, as he did not owe this debt. Plaintiff had to place these calls and make this request several times, as Defendant failed to remove his name and number from the system despite being informed they were contacting the wrong person and at his place of employment.

Defendant attempts to explain its failure to stop calling Mr. Kaniewski by stating Plaintiff's work number and name appear nowhere in their system and the phone calls must have magically happened. In reality, all the parties know this is impossible and did not stop until the Plaintiff filed this lawsuit. After the lawsuit, the calls "magically" ceased. However, the stress and problems at the office continue for Mr. Kaniewski. **Please see Exhibit 3**.

Based on the above facts, a genuine issue of material fact exists, and as such, Plaintiff requests this Honorable Court dismiss Defendant's Motion for Summary Judgment and Motion to Dismiss.

## II. LEGAL ARGUMENT

### A. Standard of Review

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. In considering a motion for summary judgment, the court must construe all reasonable inferences in favor of the nonmoving party. *Matushita Elec. Indus. Co. V. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The rule requires that the disputed facts be material. Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over trivial facts which are not necessary in order to apply the substantive law does not prevent the granting of a motion for summary judgment. Id. The rule also requires the dispute to be genuine. A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

**B.     Law**

The FDCPA is designed to protect consumers from unscrupulous collectors, regardless of the validity of the debt. *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 341 (7th Cir. Ill. 1997). The validity of the underlying debt is not a bar to suit under the Fair Debt Collection Practices Act. *McCartney v. First City Bank*, 970 F.2d 45, 47-48 (5th Cir. Tex. 1992).

Whether the debt was owed or not, it is a violation of the FDCPA to operate in the manner and method that Defendant practiced, even if only the remaining allegations are allowed.

Congress enacted the FDCPA in 1977 'to eliminate abusive debt collection practices by debt collectors' and to insure that debt collectors who refrain from abusive practices are not competitively disadvantaged. *McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 741 (N.D. Ill. 2003); 15 U.S.C. § 1692(e).

The Sixth Circuit has adopted the "least sophisticated consumer" test in determining whether a debt collector made a misrepresentation to a consumer in violation of the FDCPA. *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 400 (6th Cir. 1998); *Smith v. Transworld Systems, Inc.*, 953 F.2d 1025, 1028 (6th Cir.1992). The "least sophisticated consumer" test is an objective analysis that seeks to protect the interests of both naive consumers and debt collectors. *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 363 (2nd Cir. 2005). While the least sophisticated debtor standard is objective, it is "lower than simply examining whether particular language would deceive or mislead a reasonable debtor." *Smith v. Consumer Credit, Inc.*, 167 F.3d 1052, 1054 (6th Cir.1999), quoting *Swanson v. Southern Oregon Credit Service, Inc.*, 869 F.2d 1222, 1227 (9th Cir. 1988). Although the least sophisticated consumer standard "protects naive consumers, it also 'prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care.' " *Wilson v.*

*Quadramed Corp.*, 225 F.3d 350, 354-55 (3rd Cir. 2000).

There is no such thing as a "technical" violation of the Act. *Duffy v. Landberg (II)*, 215 F.3d 871 (8th Cir. 2000). A single violation of the Act is sufficient to impose liability. *Cavallaro v. Law Office of Shapiro & Kreisman*, 933 F.Supp. 1148, 1153 (E.D. N.Y. 1996) citing *Bentley v. Great Lakes Collection Bureau,* 6 F.3d 60, 62 (2d Cir.1993). The FDCPA imposes strict liability on the debt collector for compliance with the statute. *Russell v. Equifax A.R.S.*, 74 F.3d 30 (2d Cir. 1996). The Act imposes strict liability unless the debt collector can demonstrate that its violation was not intentional and resulted from a bona fide error, notwithstanding the maintenance of procedures reasonably adopted to avoid any such error. *Id.* At 33-34.

Defendant sets forth several defenses in its Motion for Summary Judgement and Motion to Dismiss.

### 1. Plaintiff has standing to bring his 1692c, 1692d and 1692g claims

In a sense, Defendant is asking permission to harass a person and his co-workers without any fear of redress for Plaintiff and at the same time claim they know nothing about the abuse when a victim complains.

A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k©. Debt collectors may assert this "bona fide error" or "inadvertent error" defense as an affirmative defense to avoid liability. *Carrigan v. Cent. Adjustment Bureau, Inc.*, 494 F. Supp. 824, 826 (N.D. Ga. 1980). The debt collector must only show that the violation was unintentional, not that the communication itself was unintentional. *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998).

Section 1692k(a) provides: "Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter ***with respect to any person*** is liable to such person" for the actual damages; "additional damages as the court may allow," but not exceeding $1,000; costs of the action; and reasonable attorney's fees. 15 U.S.C. § 1692k(a)

In *Whatley v. Universal Collection Bureaus Inc.*, 525 F. Supp. 1204, 1204 & n.4 (D.C. Ga. 1981), the court specifically found standing for a claim by a third-party under § 1692c, where, as here, the third-party was the recipient of the communication. This result is also supported by the plain language of the statute as a whole. The focus of §1692c regulates the content of the communication with third-parties and proscribes certain conduct, such as communicating with the third-party more than once. Moreover, the broad language of § 1692k(a) strongly suggests that a third-party has standing to sue under § 1692c

With regard to the 1692d claims, what Defendant fails to explain to this court is that in *Montgomery v. Huntington Bank*, 346 F.3d 693 (6th Cir. 2003) the court held that

> By its express terms, § 1692d provides that "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse *any person* in connection with the collection of a debt." (Emphasis added). We have interpreted this to mean that "any person who has been harmed by a proscribed debt collection practice under § 1692d . . . [may] sue for damages under § 1692k(a)(2)(A)." *Montgomery v. Huntington Bank*, 346 F.3d 693, 696-697 (6th Cir. 2003) quoting *Wright v. Fin. Ser. of Norfold, Inc.*, 22 F.3d 647 at 649 n.1 (paraphrasing the court's holding in *Whatley v. Universal Collection Bureau, Inc.*, 525 F. Supp. 1204 (N.D. Ga. 1981)).

Accordingly, the Defendant is mistaken to suggest that Plaintiff lacks standing to pursue his claim under § 1692d.

At a minimum, Plaintiff clearly has standing to bring his claim under § 1692d pursuant to *Montgomery v. Huntington Bank*, 346 F.3d 693, 697 (6th Cir. 2003). Because there is a genuine issue of material fact regarding Plaintiff's standing, Plaintiff requests this Court deny Defendant's Motion for Summary Judgment.

## 2. Plaintiff has standing to bring his 1692e and 1692f claims

Again, Defendant is asking permission to harass a person and his co-workers without any fear of redress for Plaintiff and at the same time claim they know nothing about the abuse when a victim complains. Further, the Defendant did not stop the calls until Mr. Kaniewski filled his lawsuit.

With its past behavior and misguided reliance here on *Kujawa*, there is nothing to stop the Defendant debt collector from continuing the harassment if the lawsuit is dismissed.

*Kujawa* does not hold that only a consumer has standing to bring an FDCPA claim, as Defendant implies. *Kujawa* holds that applying the "least sophisticated consumer" test, defendants did not violate the FDCPA. *Kujawa v. Palisades Collection*, LLC, 614 F.Supp. 2d 788 (E.D. Mich. 2008). Therefore, Defendant's reliance upon *Kujawa* is inapplicable to the instant case.

In *Montgomery*, the Court addressed standing with regard to § 1692e.

Likewise, § 1692e states that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. When read in conjunction with § 1692k(a),3 this means that "*any aggrieved party* may bring an action under § 1692e." *Montgomery v. Huntington Bank*, 346 F.3d 693, 697 (6th Cir. 2003) quoting *Wright v. Fin. Ser. of Norfold, Inc.*, 22 F.3d 647 at 649-50 (N.D. Ga. 1981)) (emphasis added).

Again, the Defendant is mistaken to suggest that Plaintiff lacks standing to pursue his claim under § 1692e.

Moreover, § 1692f states "A debt collector may not use unfair or unconscionable means to collect or attempt to collect *any debt*." 15 U.S.C. § 1692f. The drafters choose to use the words "any debt" in both statutes. If the rationale of *Montgomery* were to be applied to §1692f, any aggrieved party may bring an action under §1692f. Therefore, Defendant is mistaken when it states that Plaintiff lacks standing to pursue his claim under § 1692f.

At a minimum, Plaintiff clearly has standing to bring his claim under § 1692e pursuant to *Montgomery v. Huntington Bank*, 346 F.3d 693, 697 (6th Cir. 2003). Because there is a genuine issue of material fact regarding Plaintiff's standing, Plaintiff requests this Court deny Defendant's Motion for Summary Judgment.

## C. Supplemental Jurisdiction Exists Over Remaining State Law Claims

Plaintiff's state claims should not be dismissed. The cause of action under the MCPA and MOC are pendant state claims and, pursuant to 28 U.S.C. §1367, this Court may exercise supplemental jurisdiction over the related state law claims arising out of the same nucleus of operative facts that give rise to any federal law claims. As discussed above, Plaintiff has stated a claim under the FDCPA, therefore this Court may exercise jurisdiction over the state claims, as the arise from the same actions of Defendant.

Therefore, Plaintiff requests this Court deny Defendant's Motion to Dismiss Plaintiff's state claims.

## III. DAMAGES

The Fair Debt Collection Practices Act ("FDCPA") establishes a strict liability standard; a consumer need not show intentional violation of the Act by a debt collector to be entitled to damages. 15 U.S.C.A. § 1692 et seq.

A debt collector who has violated any provision of the FDCPA is liable for actual damages. 15 U.S.C. 1692k(a)(1); *In re Belile*, 209 B.R. 658 (Bankr. E.D.Pa. 1997); *Miele v. Sid Bailey, Inc.*, 192 B.R. 611 (S.D. N.Y. 1996). In addition to actual damages, if any, the consumer in an individual action may be awarded "such actual damages as the court may allow, but not exceeding $1,000. 15 U.S.C. 1692k(a)(2).

The consumer also need not show any actual damages in order to recover statutory damages. *Baker v. G.C. Services Corp.*, 677 F.2d 775 (9th Cir. 1992); *Harvey v. United Adjusters*, 509 F.Supp. 1218 (U.S.D.C. Or. 1981). "One purpose of statutory damages is to create an incentive to obey the law." *Strange v. Wexler*, 796 F.Supp. 1117 (N.D. Ill. 1992).

There is no such thing as a "technical" violation of the Act. *Duffy v. Landberg (II)*, 215 F.3d 871 (8th Cir. 2000). A debt collector who has violated any provision of the FDCPA is liable for actual damages. 15 U.S.C. 1692k(a)(1); *In re Belile*, 209 B.R. 658 (Bankr. E.D.Pa. 1997); *Miele v. Sid Bailey, Inc.*, 192 B.R. 611 (S.D. N.Y. 1996).

While the damages Mr. Kaniewski is entitled to is up to the Jury, clearly, with the amount of calls after Mr. Kaniewski begged the Defendant to stop calling plus damage to Mr. Kaniewski's professional reputation, Plaintiff is entitled to continue his lawsuit and seek both statutory and actual damages in this case. **Please see Exhibit 3**. Otherwise, Debt Collectors can harass a person and his co-workers without any fear of redress for Plaintiff claiming they know nothing about the abuse when a victim complains.

## IV. CONCLUSION

As discusses above, a genuine issue of material fact exists regarding Plaintiff's standing to bring suit for Defendant's violations of the FDCPA in their attempts to collect this debt. Moreover, because this genuine issue of material facts exists, Plaintiff's pending state claims should not be dismissed.

WHEREFORE, Plaintiff Richard Kaniewski prays that the Court dismiss Defendant's Motion for Summary Judgment and Motion to Dismiss and grant the following relief;

1. Deny Defendant's Motion for Summary Judgment;
2. Deny Defendant's Motion to Dismiss; and
3. For such other and further relief as the Court may deem just and proper.

Respectfully submitted,

s/Brian P. Parker
BRIAN P. PARKER (P48617)
Attorney for Plaintiff
30700 Telegraph Road, Suite 1580
Bingham Farms, MI 48025
(248) 642-6268
lemonlaw@ameritech.net

DATED: November 10, 2009

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

RICHARD KANIEWSKI,

    Plaintiff,

v.

    Case No. 2:09-cv-12159
    Hon. Robert H. Cleland
    MJ. Virginia M. Morgan

NATIONAL ACTION FINANCIAL SERVICES, INC.,

    Defendant.

| LAW OFFICES OF BRIAN P. PARKER, PC. | VARNUM, RIDERRING, SCHMIDT & |
|---|---|
| BRIAN P. PARKER (P48617) | RANDALL J. GROENDYK (P37196) |
| Attorney for Plaintiff | Attorney for Defendant |
| 30700 Telegraph Rd., Ste. 1580 | Bridgewater Place, P.O. Box 352 |
| Bingham Farms, MI 48025 | Grand Rapids, MI 49501 |
| Tel: (248) 642-6268 | Tel: (616) 336-6000 |
| Fax: (248) 642-8875 | Fax: (616) 336-7000 |
| lemonlaw@ameritech.net | rjgroendyk@varnumlaw.com |
| www.collectionstopper.com | www.varnumlaw.com |

## PROOF OF SERVICE

The undersigned certifies that Plaintiff's Response to Defendant's Motion for Summary Judgment and Motion to Dismiss along with this Proof of Service were served upon counsel for defendant by electronic means on November 10th, 2009 at Bingham Farms, Michigan.

"I declare under penalty of perjury that the above statement is true to the best of my information, knowledge and belief."

JULIE N. LAMANNA